# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 7, 2012        Decided January 22, 2013

No. 11-1258

TC RAVENSWOOD, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AER NY-GEN, LLC, ET AL.,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Kenneth L. Wiseman* argued the cause for petitioner. With him on the briefs were *Mark F. Sundback*, *Lisa M. Purdy*, *William M. Rappolt*, *J. Peter Ripley*, and *Kristine L. Delkus*.

*Jennifer S. Amerkhail*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*Joseph B. Nelson*, *Neil H. Butterklee*, *Joseph J. Saltarelli*, and *Elias G. Farrah* were on the brief for intervenors Long Island Power Authority, et al. in support of the respondent.

Before: TATEL and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Petitioner TC Ravenswood, LLC objects to an order of the Federal Energy Regulatory Commission that allowed certain rates to be reduced as a corrective to the exercise of "supply-side" market power, but which declined to resolve Ravenswood's call for a parallel intervention to protect suppliers from what Ravenswood calls "buy-side" market power—in practice, two specific behavior patterns that artificially depress rates. Under the circumstances of this case, we uphold the Commission's decision.

\* \* \*

The New York Independent System Operator ("NYISO") operates the bulk power transmission system in New York State. It conducts auctions both for energy and for capacity; all suppliers whose bids are at or below the market-clearing price are compensated at that price. *Keyspan-Ravenswood, LLC v. FERC*, 474 F.3d 804, 806 (D.C. Cir. 2007); see also *Simon v. KeySpan Corp.*, 694 F.3d 196, 198-99 (2d Cir. 2012) (explaining how the auctions work). On occasion NYISO requires a generator to provide energy needed for local "reliability" even if it would not have been selected through the ordinary auction system. Resp. Br. 7 (citing *New York Indep. Sys. Operator, Inc.*, 131 FERC ¶ 61,169, at P 2 (2010)). When a generator is "committed" or "dispatched"

for reliability, NYISO normally compensates the generator for the difference between its bid and the amount it receives in the market.  See, e.g., *New York Indep. Sys. Operator, Inc.*, 139 FERC ¶ 61,001, at P 5 & n.5 (2012).

But where the Federal Energy Regulatory Commission believes that the bid of a generator committed for reliability reflects the exercise of market power, it allows NYISO to "mitigate" (in plain English, to reduce) the generator's compensation.  Here the Commission approved a tariff proposed by NYISO calling for rate reductions (under specified conditions) to the level of a reliability generator's "reference price," roughly its marginal cost.  See *New York Indep. Sys. Operator, Inc.* ("Order"), 133 FERC ¶ 61,030 (2010), *reh'g denied*, *New York Indep. Sys. Operator, Inc.* ("Order on Rehearing"), 135 FERC ¶ 61,157 (2011).

The mitigation measures approved apply only to reliability energy supplied by generators located in the so-called "rest-of-state" area (the entire state of New York other than New York City and Long Island).  Ravenswood owns only one generator, which is located in New York City.  It is therefore not directly affected by the Commission's approval of NYISO's mitigation proposal.

In a response to the proposal, however, Ravenswood argued that New York energy suppliers generally do not earn enough revenue to cover their costs, and that the proposed mitigation measure would exacerbate that shortfall.  Order, 133 FERC ¶ 61,030, at P 20.  To balance that effect, it asked for measures to counteract "uneconomic entry" that has allegedly depressed rates in the capacity market.

Ravenswood addressed two forms of uneconomic entry. The first is a phenomenon that the Commission has recognized and, indeed, one that NYISO has sought to

counteract in New York City by means of a price floor. See *New York Indep. Sys. Operator, Inc.*, 122 FERC ¶ 61,211, at PP 100-06 (2008). It occurs when a large net buyer of capacity makes a capacity purchase or investment and then offers the capacity for sale at auction at reduced prices, thus lowering the market-clearing price. *Id.* at P 101. Since all capacity suppliers receive the same price from a given auction, such conduct helps the net buyer whenever the reduction in its overall purchase costs exceeds its losses in selling the underpriced capacity. But the maneuver concomitantly harms net suppliers.

Ravenswood asserts comparable uneconomic entry in the form of federal and state policies subsidizing certain types of power generation, such as wind power. See, e.g., Pet'r Br. 24-25; Testimony of Roger Williams, Sept. 2, 2010, Joint Appendix ("J.A.") 148-65; see also Energy Info. Admin., U.S. Dep't of Energy, Federal Financial Interventions and Subsidies in Energy Markets, at xvi tbl. ES5 (2008), *available at* http://www.eia.gov/oiaf/servicerpt/subsidy2/pdf/subsidy08. pdf (estimating "subsidies and support to electricity production" by type of energy, calculated in dollars per megawatt hour, for fiscal year 2007). Because the subsidies allow generators of such energy to profitably make bids that are below their costs, they reduce the market-clearing auction price. This both pushes some resources out of the market (those generators whose bids exceed the artificially lowered market price), and reduces the prices received by generators that remain in the market.

Ravenswood asked the Commission to mandate mitigation measures to counteract the effects of both forms of uneconomic entry. The Commission declined to do so. It reasoned first that no commenter had submitted evidence that NYISO's mitigation proposals would prevent generators from recovering their full costs. Order, 133 FERC ¶ 61,030, at P

54. It also noted that in periods of market-wide scarcity, when the auction price would exceed the marginal costs of "virtually all generators," generators' (non-reliability) sales in the energy market would contribute to their recovery of fixed costs. *Id*. at P 51. Finally, it noted that NYISO had already begun an internal stakeholder procedure to address the general issue of fixed-cost recovery, including any effect of the approved mitigation measure. *Id*. at P 54. It denied rehearing in similar terms. Order on Rehearing, 135 FERC ¶ 61,157.

\* \* \*

The Commission argues first that Ravenswood lacks Article III standing to challenge the Commission's approval of the mitigation measure. To establish constitutional standing, a party must satisfy three familiar requirements—injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Commission argues that its orders inflict no injury on Ravenswood (an argument that can be framed in terms of either injury or causation).

The Commission's argument is superficially compelling. As the Commission points out, the mitigation measure adopted applies only to generators located in the rest-of-state area, and Ravenswood owns but a single generator, which is located in New York City. Thus it sells no energy subject to the mitigation measure.

Ravenswood's injury, however, arises not from what the Commission did but from what it refused to do—namely, to address Ravenswood's claim to protection from uneconomic entry. While in some cases the benchmark for ascertaining the existence of an injury is the status quo ante, in others it is the difference between what the plaintiff sought and the agency granted. Examples of the latter include parties' claims

to a tax exemption, *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1 (1989), government contract bidders' challenges to a contract's award to another, *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 861-73 (D.C. Cir. 1970), and regulated utilities' claims to the entirety of a rate increase where the agency granted less than requested, *NEPCO Municipal Rate Committee v. FERC*, 668 F.2d 1327, 1332-42 (D.C. Cir. 1981). (The last case does not discuss standing, evidently because it was so obvious.)

Perhaps recognizing that exclusive focus on its approval of NYISO's proposals makes no sense, the Commission also redeploys an argument that it made in its orders—that Ravenswood has other avenues, such as the ongoing stakeholder process, to air its complaints about uneconomic entry. Resp. Br. 23-24. But even if we assume the adequacy of those avenues, denial of remedies in *this* proceeding at a minimum exposes Ravenswood to some delay.

At oral argument, Commission counsel claimed that Ravenswood makes no sales into the rest-of-state capacity market, the domain for which it sought measures against uneconomic entry. If true, that would likely defeat any claim of injury. But Ravenswood asserted in its opening brief that "from time-to-time [it] makes sales into the [rest-of-state] energy and capacity markets." Pet'r Br. 34. The Commission's brief specifically notes that passage, see Resp. Br. 21, but doesn't question its truth; nor does anything in the record appear to cast doubt on it.

We note finally that the "Standing" section of Ravenswood's initial brief relies mostly on an argument that Ravenswood is injured by the supply-side mitigation rules approved by the Commission in the orders, see Pet'r Br. 33-34, rather than the more nuanced argument we have set forth here. Nonetheless, it would be a triumph of formalism to let

this defeat Ravenswood's claim. Ravenswood's briefs and the administrative record make clear that Ravenswood's grievances (with one exception noted below) are with the Commission's refusal to address allegations of uneconomic entry, not with the merits of the supply-side mitigation mechanism itself. See, e.g., *id.* at 3-4 (describing this case as about "FERC's failure to establish a comprehensive and balanced market power mitigation structure" and explaining that the problem arises from failure to address uneconomic entry); Request for Rehearing of TC Ravenswood, LLC and TransCanada Power Marketing, Ltd., at 6-9, *New York Indep. Sys. Operator, Inc.*, 133 FERC ¶ 61,030 (focusing predominantly on the argument that "the Commission can't simply address half of a potential market power problem when seeking to address actions that would not be expected in a competitive market"); cf. *Feature Grp. IP W., LLC v. FCC*, 424 F. App'x 7, 9 (D.C. Cir. 2011) ("[A]lthough [petitioner's] statement in its opening brief establishing standing leaves much to be desired, we conclude that . . . Article III standing is evident from the administrative record.").

As to one of Ravenswood's arguments, the Commission's standing contention is on target. The Commission brushed aside Ravenswood's suggestion that the Commission include a scarcity-pricing mechanism in the mitigation measures. Request for Rehearing of TC Ravenswood, LLC and TransCanada Power Marketing, Ltd., at 6-7. Ravenswood—which is not subject to the mitigation measures—offers nothing to suggest that this ruling affected its cognizable interests.

We thus proceed to the question of the Commission's refusal to use this proceeding to address problems of uneconomic entry.

8

\* \* \*

The core of Ravenswood's claim is that "acceptance of supply-side mitigation measures without *any* counterbalancing buy-side mitigation measures" violated the Commission's "general policy against single-issue rate filings." Pet'r Br. 34-35. It also reframes this as an argument that the Commission unlawfully refused to "provide for a comprehensive market design." *Id*. at 41. Its basic idea is that by approving a utility's elimination of a generally price-inflating practice without eliminating (or at least seriously considering eliminating) a generally price-suppressing practice, the Commission violated its duty to assure the utility's tariff reflects "just and reasonable" rates and service terms. See Federal Power Act § 205, 16 U.S.C. § 824d.

The Commission first contends that we lack jurisdiction to consider the argument because Ravenswood failed to include it in its request for rehearing. See *id*. § 313(b), 16 U.S.C. § 825*l*(b). In fact, however, Ravenswood's request for rehearing raised essentially the same arguments as its briefs before us do, though not citing precisely the same authority. Compare, e.g., Request for Rehearing of TC Ravenswood, LLC and TransCanada Power Marketing, Ltd., at 3, with Pet'r Br. 35.

On the substance, we start with two basic assertions by the Commission that Ravenswood never seriously contests: first, that Ravenswood and its fellow commenters failed to offer data demonstrating "that market participants generally will be unable to recover their costs due to application of the proposed mitigation provisions," and second, that NYISO had already begun an internal stakeholder procedure to address the general issue of fixed-cost recovery, including any effect of the approved mitigation measure. Order, 133 FERC ¶ 61,030,

at P 54. Thus we not only have no reason to think that "the total effect of the rate order" is unjust and unreasonable, *Fed. Power Comm'n v. Hope Natural Gas Co.*, 320 U.S. 591, 602 (1944), but we have affirmative reason to believe that Ravenswood will have an adequate opportunity to pursue remedies for possible uneconomic entry.

It is true, of course, that the Commission may not slice and dice issues to the prejudice of a party. An agency abuses its "broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures and policies," *Mobil Oil Exploration & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 231 (1991), "when its manner of proceeding significantly prejudices a party or unreasonably delays a resolution," *La. Pub. Serv. Comm'n v. FERC*, 482 F.3d 510, 521 (D.C. Cir. 2007). For example, if the Commission granted a utility a rate increase based on a specific set of cost increases yet refused to consider customers' claims that these were wholly or partially offset by changes in other costs, it would surely abuse that discretion. Cf., e.g., *Southwestern Pub. Serv. Co. v. FERC*, 952 F.2d 555, 560-63 (D.C. Cir. 1992); *Carolina Power & Light Co. v. FERC*, 860 F.2d 1097, 1101-02 (D.C. Cir. 1988); *City of Westerville v. Columbus S. Power Co.*, 111 FERC ¶ 61,307, at PP 14, 18 & n.11 (2005).

Here, however, we are not convinced that there has been any abuse of discretion. In the first place, Ravenswood exaggerates the integrated character of the two issues— mitigation of market power exercised by generators supplying reliability energy and correction of the two forms of uneconomic entry in the capacity market—by calling them matters of supply-side and buy-side "market power." Granted, they both involve distortion of competitive results, but market power and subsidies seem to be different brands of distortion.

Second, in struggling to address the complexities posed by regional integration and independent systems operators the Commission has pursued an iterative process, with our explicit approval in at least one case. In *TC Ravenswood v. FERC*, 331 F. App'x 8 (D.C. Cir. 2009), we rejected Ravenswood's claim that the Commission's approval of an NYISO tariff amendment providing incremental variable cost compensation to dual fuel generators required it immediately to consider compensation for fixed costs related to reliability. Those issues seem at least as integrally related as the issues involved here, but we nonetheless approved the Commission's "incremental approach to [the] problem." *Id*. at 9.

Finally, the specific context of the mitigation orders here itself exemplifies the iterative process. The Commission had previously accepted an NYISO filing applying the mitigation principle to three specific generators, and in doing so had observed that NYISO had submitted to the stakeholder process a proposal for mitigation generally. See *New York Indep. Sys. Operator, Inc.*, 131 FERC ¶ 61,169, at PP 101-02 (2010), *reh'g pending*; Order, 133 FERC ¶ 61,030, at PP 3-4. This of course is just the process to which the Commission has here remitted Ravenswood. Although delay may be costly, just such delay has occurred in the process of addressing supply-side market power, and it would take a far clearer case than this to justify our disrupting the pattern created by the Commission's choices over how to sequence its consideration of issues.

We also reject Ravenswood's argument that the Commission violated due process and other obligations by neglecting to answer Ravenswood's arguments and proposals. The Commission in fact adequately explained its rejection of those proposals.

11

* * *

The petition for review is therefore

*Denied.*